## GOLDSMITH and another vs. BRYANT.

SALE AND DELIVERY: *Vendor's right, on refusal of payment, to retain the property.*— *When and how it should be exercised.*—*Feme covert: when deemed the agent of her husband for purpose of a demand.*— *Verdict in replevin.*

1. When goods are sold to be delivered by the vendor, without any stipulation for credit, it is his right to demand payment immediately upon their delivery; and, payment being refused, he may reclaim the goods.
2. Ordinarily, this right to reclaim should be exercised promptly after refusal of payment; otherwise the title will be presumed to have passed absolutely to the purchaser.
3. Where, however, the goods are of such a nature that to remove them from the place where they have been delivered will involve, not only labor and expense, but actual injury to the goods, and the vendee evades the vendor, the latter will be entitled to a reasonable time within which to reclaim.
4. Under such circumstances two weeks may not be an unreasonable time, and a verdict for the vendor in such a case will not be disturbed on the gound of his laches in making the demand.
5. Where the vendee refuses payment on delivery of goods sold, and then absents himself, leaving them in the custody of his wife, she is to be deemed his agent as to the possession of the property, so that a demand on her for it will be good.
6. Where, in such case, on demand of the property being made, violence is threatened to any person offering to remove it, it is unnecessary to prove an unconditional offer, at the time of the demand, to refund such part of the purchase-money as had been previously paid.
7. Where the pleadings in replevin put in issue both the plaintiff's right of property and the wrongful detention, a verdict " for the plaintiff, and that the goods were wrongfully detained by defendant," *held* equivalent to an express finding of title in the plaintiff.

APPEAL from the Circuit Court for *Milwaukee* County.

Replevin, for carpets, curtains, etc., sold by plaintiffs to defendant, and laid down or put up by them in his

Goldsmith and another vs. Bryant.

house. Fifty dollars were paid upon the purchase price during the time while the purchases were being made, but the balance had never been paid. The principal questions were, whether plaintiffs had parted with the possession so that the property had vested absolutely in defendant, and whether, before the commencement of the action, plaintiffs had duly demanded possession of the property, and offered to return the fifty dollars. As to the demand made, one of the plaintiffs testified that before the action was commenced he "sent quite a number of men to notify defendant of his promise," [to call and pay for the goods, made on the day they were put in place]; that he went once to the house himself "and notified defendant's daughter" (who was his oldest child), the defendant and his wife being absent; that subsequently, not having been able to find defendant himself, he met defendant's wife at an attorney's office, proposed to her to refund the fifty dollars on receiving back the goods, and told her that they (plaintiffs) "must have the money or the goods that day;" and that she threatened to shoot any one who should come to the house and attempt to take the goods. This evidence was received against defendant's objection. The substance of the evidence upon the other points, and the general character of the instructions given, will sufficiently appear from the opinion.

Verdict for the plaintiffs; new trial denied; and defendant appealed from a judgment on the verdict.

*L. Wyman,* for appellant, to the point that the delivery of the goods was perfect and title had therefore vested in the purchaser absolutely, cited *Chapman v. Lathrop,* 6 Cow. 110, 114; *Hussey v. Thornton,* 4 Mass. 405; *Lupin v. Marie,* 6 Wend. 77; *Furniss v. Hone,* 8 id. 247; *Carleton v. Sumner,* 4 Pick. 516; *People v. Haynes,* 14 Wend. 547; *Hennequin v. Sands,* 25 id. 640; *Smith v. Lynes,* 1 Seld. 41; *Ives v. Humphreys,* 1 E. D. Smith, 196; and *Pitts v. Owen,* 9 Wis. 152. Demand for the goods was improperly made on defendant's wife.

Reeves' Domestic Relations, 158. The verdict was fatally informal and defective. *Ronge v. Dawson,* 9 Wis. 246; *Appleton v. Barrett,* 22 id. 568; *Child v. Child,* 13 id. 27; *Smith v. Phelps,* 7 id. 211; *Swain v. Roys,* 4 id. 150; *Rose v. Tolly,* 15 id. 443; *Hill v. Stocking,* 6 Hill, 177; *Bemus v. Beekman,* 3 Wend. 667; *Boynton v. Page,* 13 id. 425, 431; *Patterson v. U. S.,* 2 Wheat. 221.

*Smith & Stark,* for respondent, as to plaintiffs' right to reclaim, cited Hilliard on Sales, p. 113, §§ 37–39 and note; Story on Sales, § 13; 2 Kent's Comm. 496; 1 Parsons on Contracts, 537 and note; *Garbutt v. Bank of Prairie du Chien,* 22 Wis. 384; *Pitts v. Owen,* 9 id. 152; *Palmer v. Hand,* 13 Johns. 434; *Chapman v. Lathrop,* 6 Cow. 110; *Haggerty v. Palmer,* 6 Johns. Ch. 437; *Russell v. Minor,* 22 Wend. 659; *Smith v. Lynes,* 1 Seld. 41; *Acker v. Campbell,* 23 Wend. 372. As to the alleged want of any demand for the goods, they argued (1) that plaintiffs made the best demand they could; and (2) that the delivery, having been obtained by fraud, gave defendant no rights, and no demand was necessary. *Cary v. Hotailing,* 1 Hill, 311, 314; *Lamb v. Clark,* 5 Pick. 193, 197; *Thurston v. Blanchard,* 22 id. 18; *Schroeppel v. Corning,* 5 Denio, 236, 243; *Stilman v. Squire,* 1 id. 327; *Bussing v. Rice,* 2 Cush. 48. As to the substantial correctness of the verdict, they cited 1 Burrill's Practice, 236; 3 id. 418; 1 Hilliard on Torts, 216; 13 Wis. 419; 14 id. 63; 16 id. 280.

COLE, J. It is entirely clear that the plaintiffs did not intend to absolutely deliver the goods in question, and part with the possession, until the price was paid. It was a cash sale, and the delivery and payment were to be simultaneous. By the contract, the plaintiffs were compelled to cut, make up, and nail down the carpets, and to make up and hang the curtains, and fix the cornices, in the defendant's house. And until this was done, they could not insist upon payment. It is not like the case of the sale and delivery of a package

or box of goods which the vendor can retain within his exclusive control and possession until payment is made. But here it was a part of the agreement that the plaintiffs were to make up and lay the carpets, and hang the curtains in the defendant's house, before they could insist upon payment. The witness, Jacob Mampel, testified that he was sent to the defendant's house to finish the job of hanging the curtains, the carpets having been laid the day before by another man; and that he was instructed by the plaintiffs to collect the money for the goods, and not to leave the goods until paid for. He says that when he got through he presented the bill to the defendant, and told him that he would like to have the cash upon it, and the defendant said: "Well, I will be down in the store and pay it." Upon the witness informing him that he was instructed to collect the money then, and to fetch it with him to the plaintiffs, the defendant again said: "Well, that is all right; I am going down to Mr. Engleman's, and I shall be at the store between three and four o'clock and pay it." And one of the questions submitted to the jury was, whether the plaintiffs, by leaving the goods in the defendant's possession as proven by this and another witness, had made an absolute delivery of them, waiving a simultaneous payment, and had lost the right to reclaim the goods. As bearing upon that question, the court instructed the jury, that, when a merchant sells a bill of goods, and nothing is said about giving time to pay for them, the law implies that they are to be paid for, either at the time of the sale or at the time of delivery; that the vendor, however, may waive this condition or lose it, and that one of the questions for them to determine was, whether the plaintiffs had waived it or lost it in this case; and that if they should be satisfied, from the testimony, that the sale of the goods was without any credit, then they were to consider whether the plaintiffs had forfeited or lost their right, under the circumstances of

the case, to resume possession ; that, where no stipula-
tion is made at the the time of the sale as to the time
when payment is to be made, the law implies that they
are to be paid for at the time and place of delivery,
and that it is the obligation of the purchaser not only
to receive the goods, but to pay for them ; that, if the
goods were delivered without requiring the payment,
the property passed to the buyer absolutely, but if
payment was required at the time of delivery, and not
made, the plaintiffs would be entitled to a reasonable
time within which to resume possession; and that it
was a question of fact for them to determine, whether
the plaintiffs, within a reasonable time, exercised their
right to take the property after the delivery thereof to
the defendant and his failure to pay for the same.

Although no exceptions were taken to the general
charge on the trial, yet it has been argued here that
this portion of it was unsound in principle, and calcu-
lated to mislead the jury to the prejudice of the
defendant.   But it seems to us to have been a very
proper direction to give the jury, in view of the evi-
dence.   For it appeared that the plaintiffs waited a
fortnight or more after the carpets were laid and cur-
tains hung, before they attempted to reclaim the goods,
but all the time trying to find the defendant to obtain
the price.   And not being able to find him, or procure
their pay, they brought this action for the possession
of the property.   And one ground relied on to defeat
a recovery was, that the plaintiffs, by leaving the goods
in the possession of the defendant in the manner and
for the length of time they did, without payment, had
clearly waived their right to insist upon simultaneous
payment, as a condition to their parting with the title
Permitting property to remain that length of time in
the possession of the vendee would doubtless in many
cases be considered strong, if not conclusive, proof that
the vendor waived immediate payment, and delivered
the goods absolutely.   But a case might arise, and

indeed we think this is such a one, where the peculiar circumstances might excuse or justify delay on the part of the vendor in asserting his right to remove the goods. For, as observed by the counsel for the plaintiffs, the delivery of these goods was laborious and difficult, and to take them away from the house was a work of time and expense, injurious to the articles themselves, and therefore to be avoided unless as a last resort. In the first instance the defendant evaded a payment down, by an act of bad faith. When told by Mampel that he was instructed to collect the money of him then, the defendant said he would· be at the store in the afternoon and pay it. He did not go to the store, but kept out of the way. Under the circumstances, as detailed by the witnesses, some delay on the part of the vendors in reclaiming the property might be excusable. And the jury must have found that they did not permit it to remain in the possession of the vendee an unreasonable length of time.

Again, it is said that the plaintiffs could not recover because they did not, before the commencement of the suit, demand the goods and refund the fifty dollars which they had received on account of the purchase-money.

But it seems to us a sufficient answer to this objection, to say that it appears that the plaintiffs made the best demand they could. The goods remained in the actual custody of the defendant's wife and daughter, he being absent. The wife must be deemed to be the agent of the defendant for the purpose of a demand and refusal.

In respect to refunding the money, one of the plaintiffs testifies that he offered the defendant's wife the fifty dollars if she would give up the goods. He says, upon that point: "I told her if we could not get the money, I would have the goods, and have them that day." And, in answer to the question as to what she said about paying the money, the witness further testi-

fied: " She said she could not give it to me then; and then I said we must have the goods; and then she made some threat or other, that she would shoot anybody that would come for the goods, or something like that." In view of such a threat from the defendant's wife, who had the goods under her charge, we think the plaintiffs made all the offer to refund that the law required.

Again, it is said that the verdict fails to find the right of property in one party or the other. The complaint alleged the wrongful detention of the goods, the property of the plaintiffs. The answer denied this allegation, and set up property in the defendant. The jury found " for the plaintiffs in this action, and that the goods and chattels mentioned in the complaint are, and were at the time of the commencing this action, wrongfully detained by the defendant from," etc. This, upon the issues, is equivalent to a special finding of the right of property in the plaintiffs.

These remarks upon the general questions involved in the case render it unnecessary to specifically notice the exceptions taken to the instructions given at the request of the plaintiffs, as well as those taken to the refusal of the court to give those asked by the defendant.

*By the Court.*—The judgment of the circuit court is affirmed.