HEMAN ALLEN *et al.* ·

*v.*

JOSEPH HARTFIELD.

1.  SALE—*right to possession.*  Where a bill of sale of horses acknowledged the receipt of $20, and provided for the payment of $255, the balance, in three days after its date, but fixed no time for the delivery of the horses, which were left with the seller:  *Held,* that it did not show a sale on credit, and that the seller was not bound to deliver possession until payment was made or tendered.

2.  SAME—*rescission, where possession obtained in fraud of seller's rights.* Where a sale of horses was made for cash on delivery, and, when taken to the purchaser, he directed the seller to put them in the stable and come to the purchaser's house for his pay, and at the house he offered the seller his own notes in payment, which the latter declined to accept, but demanded the money or the horses, it was *held,* that if the purchaser obtained possession without intending to pay in money, it was in violation of the contract, and in fraud of the seller's rights, and the latter had a right to rescind the contract and sue for and recover his horses or their value.

3.  AGENT—*liability of, for aiding in the fraud of his principal.*  Where a purchaser fraudulently obtains possession of horses bought by him, which he refuses to deliver up, and A sends the horses to his brother with a letter not to give them up without A's order, and the latter concealed the horses and refused to give them up:  *Held,* that A and his brother, if not liable as principals, were certainly liable in trover as agents of the fraudulent purchaser in carrying out a common purpose.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

This was an action of trover, brought by Joseph Hartfield against Heman Allen, J. B. Mann and William H. Mann.

The proof showed that the plaintiff sold the defendant Allen two horses, evidenced by the following bill of sale:

"This is to certify that I, Joseph Hartfield, have this day sold to Heman Allen two gray horses, named Billy and Mack, and have received $20 on the same, and the balance to be paid the 21st of November, 1873. Balance due J. H. Hartfield, $255. Cropsy, Nov. 18, 1873.

his<br>JOSEPH + HARTFIELD."<br>mark

The horses were left with the plaintiff. In December he took the horses to Allen's premises, and, by direction of Allen, put them in his stable and went to his house for the pay. Allen then tendered him three notes on the plaintiff, which he. got of James B. Mann. The plaintiff refused to take them in payment, and demanded the money or the return of his horses. The other facts are stated in the opinion. On the trial the court gave the following, among other instructions, for the plaintiff:

"The court instructs the jury that, by the written contract in evidence, Hartfield was to deliver the horses on the 21st day of November, to Allen, and that Allen was to pay Hartfield $255 in money on delivery. It was not a sale on credit, and Allen had no right to the possession of the horses without the payment of the $255 in money; and if Allen obtained the possession of the horses without the intention of paying the money, then such possession was obtained by fraud, and the property in the horses did not pass to Allen by such delivery."

The jury found the defendants guilty, and assessed the plaintiff's damages at $269. The court overruled motions for a new trial and in arrest of judgment, and rendered judgment on the verdict, and the defendants appealed to this court.

Messrs. STEVENSON & EWING, for the appellants.

Messrs. WILLIAMS, BURR & CAPEN, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It appears that Allen, on the 18th day of November, 1873, purchased of appellee two horses for $275, and paid him $20 on the purchase. He took from appellee a written bill of sale, which states that the balance was to be paid on the 21st of that month. In December appellee placed the horses in Allen's hands, who directed him and his son to put the horses in the stable and go to the house and get his pay. They did as directed, but when appellee went to the house for his pay, Allen offered him three notes on appellee, which he refused to receive, and which he claimed he did not owe. Appellee demanded the horses or the money, but Allen informed him he could have neither.

It seems that a messenger was sent with the horses to James B. Mann, of whom Allen had obtained the notes, for instructions. He wrote a letter to his brother, Wm. H. Mann, and gave the messenger $5. When the horses were demanded of Wm. H. he said that a young man had brought them there with a letter from his brother not to let any one have them without a letter from him. James B. Mann testified that he wrote the letter to his brother, and gave the messenger $5 for expenses; but, when inquired of by young Hartfield, he denied knowing where the horses were.

Hartfield brought an action of trover against Allen and the two Manns.

On a trial in the court below, the jury found for the plaintiff, and, after overruling a motion for a new trial, the court rendered a judgment in his favor, from which this appeal is prosecuted.

There is no ground for holding that this was a sale on credit. The bill of sale will bear no such construction. By it the balance of the money was to be paid on the 21st day of November, three days after the sale. No time was fixed for a delivery of the horses. Hence the law implies that they

were not to be delivered until the money was paid; that they were to be simultaneous acts, and that the vendor could not be compelled to deliver them until payment was made, or the price tendered at or after the time fixed for payment.

It may be that the title vested in Allen, subject to be defeated by a non-compliance with his part of the agreement. But even if that be true, he had no right to possession until he paid the money. Appellee had not agreed to take notes, even his own, in payment for the horses. Allen had not even alluded to the notes. Hence it was money for which appellee sold the horses, and Allen had no right to possession until he paid or tendered the money. If Allen obtained possession of the horses without intending to pay for them in money, it was in violation of the contract, and in fraud of appellee's rights, and he then had a right to rescind the contract and sue for and recover the horses or their value. In this view of the contract, the instruction given for appellee, and which appellants question, was correct and properly given.

It is next urged that the evidence is not sufficient to sustain the verdict against the two Manns. We fail to see why. They acted in the matter as though they were principals, but if not, they certainly were agents of Allen. One of them directed the other to hold and not give them up unless upon a letter from him, and he furnished money to pay the expenses in taking the horses to a place of concealment. And his brother, to whom he sent the horses, refused, on demand, to give them up to the owner. If James had no interest in them, or was not aiding Allen to thus obtain the horses, why did Allen send the messenger to James for money and instructions as to what he should do with the horses?

We regard the evidence as abundant to connect the Manns with the fraud, either as principals or active agents in carrying out the common purpose, and the judgment is manifestly just, and it must be affirmed.

*Judgment affirmed.*