McPherson v. Wiswell.

JOHN MCPHERSON, PLAINTIFF IN ERROR, V. ALLURED
N. WISWELL ET AL., DEFENDANTS IN ERROR.

**Contract:** RESCISSION: TRIAL: INSTRUCTIONS TO JURY. There
being evidence before the jury tending to prove a rescission by
W. of the contract between him and M., an instruction stating
the supposed facts of the case, and telling the jury that if they
believed such facts from the evidence they should find for the
defendants, but which instruction ignored and left out the
question of rescission and the evidence thereof; *Held*, Erroneous,
and a new trial awarded, although in other and former instruc-
tions the court had properly instructed the jury upon the law
of rescission and its application to the case before them.

ERROR to the district court for Gage county. Tried
below before POUND, J., sitting for BROADY, J.

*Hardy & McCandless* and *Babcock & Davidson*, for
plaintiff in error, cited: *Eaton v. Redick*, 1 Neb., 305. *Gillet
v. Maynard*, 5 Johns., 85. *Frost v. Clarkson*, 7 Cow.,
24. *Minert v. Emerick*, 6 Wis., 355.

*Hazlett & Bates* and *T. W. Colby*, for defendants in error,
cited: 2 Kent Com., 508. *Lamb v. Lathrop*, 13 Wend.,
97. *Smith v. Loomis*, 7 Conn., 115. *Hadley v. Pugh*, 1
Wright, 554. *Sands v. Taylor*, 5 Johns., 395. *Frey v.
Drahos*, 10 Neb., 594.

COBB, J.

This cause was before this court at the July term, 1884,
when the judgment of the district court was reversed and
the cause remanded. 16 Neb., 625. It seems that upon
the second trial there was again a verdict and judgment
for the defendants; and the cause is again brought to this
court on error by the plaintiff.

The cause was tried in the court below the second time
on the same pleadings as the first, except that before the

second trial the plaintiff, by leave of the court, filed an amended reply ; but, as the pleadings were not very fully set out in the former opinion, I will copy the substance of the petition, answer, and reply.

### PETITION.

"At the times hereinafter mentioned the plaintiff was the absolute owner of and entitled to the possession of 19 combined reapers and mowers, consisting of eleven double rigged machines known as 'Marsh No. 4's,' and eight machines known as 'Valley Chiefs,' of the value of $3,800. About December 25th, 1877, the defendants combined, confederated, and conspired together to cheat, defraud, and swindle the plaintiff out of said property and to unlawfully obtain possession thereof and place the same beyond the reach of the plaintiff. For the purpose aforesaid, and in pursuance of said conspiracy, the defendants falsely and fraudulently contrived between them a sham sale of said property from defendant Wiswell to defendant Norcross, and further, in pursuance of the same design and conspiracy aforesaid, fraudulently contrived to obtain possession of said property by means of a writ of replevin sued out by defendant Norcross in an action wherein this plaintiff was not a party, and further, in pursuance of the same conspiracy aforesaid, the defendants did at the time aforesaid wrongfully and unlawfully obtain possession of and convert to their own use and benefit all the said property, and placed the same beyond the reach of this plaintiff—to plaintiff's damage $5,500, for which plaintiff asks judgment."

### ANSWER.

"1.   Denies each and every allegation in plaintiff's petition contained.

"2.   That on the 22d day of October, 1877, after the accrual of the cause of action in plaintiff's petition stated, and before beginning this action, James S. Marsh and

Elisha C. Marsh, the parties from whom plaintiff claims to have purchased the property in controversy, and under whom plaintiff claims and derives title to the property described in the petition—if he has or ever had any title thereto—and this defendant Wiswell by mutual agreement submitted all causes of action existing between them, including the cause of action set out in plaintiff's petition, which was then owned by said Marshes, to the arbitration of Elijah Filley, Wm. H. Fulkerson, and Charles G. Dorsey, who were to make and publish their award on or before January 22, 1878. That January 18th said arbitrators made and published their award (here follows a copy of the award), by which they found 'that on the 19th day of July, 1877, James S. and E. C. Marsh orally contracted' with the defendant Wiswell for the purchase of three sections of school lands and considerable personal property of said Wiswell, to be paid for in machines and money, and that the machines in question were on or about July 20th, 1877, by said Marshes turned over to said Wiswell in pursuance of said contract by said Marshes, and that Wiswell was entitled to said machines; and said answer avers that these machines were awarded to said Wiswell by said arbitrators, that plaintiff had no interest in said machines nor any part thereof at that time, but acquired his interest subsequent to said arbitration, from said Marshes; and avers that defendant has performed and offered to perform all conditions of said award on his part, that said Marshes have failed and refused so to do."

### REPLY.

"1. Admits there was a submission and award in arbitration, and avers that thereafter the district court, to which said award was made returnable for final judgment, fully and completely set aside said arbitration proceedings and said award, and held the same for naught; and that this plaintiff was not a party to said arbitration proceedings.

"2. Avers that soon after July 19, 1877, defendant Wiswell, of one part, and James S. and Elisha C. Marsh, of the other part, rescinded and abandoned their contemplated contract referred to in said amended answer, which was only oral negotiations for a written contract, which was never made nor perfected; yet whatsoever there was of it the said parties fully rescinded and abandoned, and said Wiswell kept and retained all of said land mentioned in said amended answer, and also all the personal property therein mentioned.

"3. A general denial of all new matter and of every allegation in said amended answer not hereinbefore admitted."

The evidence at the last trial was about the same as at the first, except that there was some evidence tending to prove a rescission of the contract under which the defendants claim the machines in question by the defendant Wiswell.

The court then gave the following instructions asked by the plaintiff:

"2d. The jury are instructed that the Marshes, being the original owners of the machines described in the petition, if you believe from the evidence that said machines were embraced in the written contract or assignments by the Marshes to the plaintiff McPherson which have been introduced in evidence, then the plaintiff acquired whatever title the Marshes had in said machines at the date of said contracts or assignments, and if you believe from the evidence that at that time the Marshes still really owned said machines and that the same have been converted by the defendants, then you will find for the plaintiff.

"3d. The defense that defendant Wiswell purchased the machines in controversy of the Marshes prior to plaintiff's purchase of them is an affirmative one, and in order to maintain it defendants must prove such prior purchase by a preponderance of the proof, and unless you find that

prior to November 5th, 1877, defendant Wiswell purchased said machines of the Marshes you will find for the plaintiff if you further believe said machines were included and covered by said contracts of plaintiff.

"4th. If the plaintiff is entitled to recover in this action at all he is entitled to recover the value of the eleven Marsh No. 4's and eight Valley Chief machines on December 27th, 1877, together with interest thereon from that day to the present at the rate of seven per cent per annum.

"5th. If the parties to an alleged contract agree that it shall be reduced to writing in an instrument to be signed by them before it is considered complete, it will not be obligatory on them without the execution of such written instrument, and if you believe from the evidence defendant's claim to a purchase of the property in controversy by defendant Wiswell is based on negotiations between him and the Marshes for an exchange of lands and personal property from Wiswell to the Marshes, and of machines and money from the Marshes to Wiswell, intended by the parties to be consummated in a written agreement, but that it was never, in fact, so consummated in such written agreement, then you must find that no such purchase was made and Wiswell did not obtain title to said property in controversy.

"6th. If you believe from the evidence that even if there was a completed contract between the Marshes and Wiswell in relation to the machines in controversy, it is competent for you, if the evidence convinces you that such is the fact, to find that said contract was abandoned by the parties, in which case it will avail nothing to these defendants, and if you find that Wiswell sold and converted to his own use the property he claims was exchanged for said machines, having taken the same back and kept for his own or having sold it to other parties, then you may find that by so doing Wiswell so far abandoned said contract that the defense based thereon in this action must fail and you will find for the plaintiff.

"7th. If you should find there was a completed contract between Wiswell and the Marshes involving these machines, and that even if the Marshes first refused to comply with said contract, but afterwards Wiswell before offering to comply with his part of the contract made it impossible for him to comply with the same, that would amount to a rescission of the contract and no title to the machines passed under such contract.

"8th. If you find that the plaintiff became the owner of the machines in controversy, the assumed sale of said property by Wiswell to Norcross was a conversion thereof by both defendants which renders them both liable in this action for the value thereof and interest, and if defendants colluded together for the purpose of obtaining possession of said property, and were not entitled to the possession thereof, then you must find them both liable in this action for said value and interest for which you will find for the plaintiff.

"9th. Even if you are convinced that E. C. Marsh said to defendant Norcross and others that the property in controversy had been sold to defendant Wiswell, yet before he, defendant Norcross, bought the same of Wiswell he learned of the controversy between Wiswell and the Marshes about the title of the property, and the evidence satisfies you that said contract was not completed and said property was not really in fact sold to Wiswell, you will find for the plaintiff.

\*    \*    \*    \*    \*    \*

"11th. The jury are instructed that you cannot consider any of the arbitration proceedings or papers or that part of the answer relating to the arbitration for the purpose of showing title or possession of the property in controversy in defendants or either of them, because the award was set aside by this court and all of said arbitration proceedings go for nothing.

"12½. The court further instructs the jury that what

was or was not involved or included in the suit heretofore
pending in the United States court between McPherson and
the Marshes is not involved in this case, as there has been
no competent evidence introduced to prove that the title to
said machines was involved in, or that the plaintiff lost
whatever title he had to said machines by reason of said
suit."

And at the request of the defendants the court gave the
jury the following instructions :

" 1st. The court instructs the jury that in order to find
for the plaintiff (McPherson) you must be satisfied from a
preponderance of the evidence that at the time of the com-
mencement of this action the plaintiff was the absolute
owner of the machines in controversy, and either had them
in his possession or was entitled to the immediate posses-
sion of them, and that the defendants did wrongfully ob-
tain possession of them and converted them to their own
use."

To the giving of which the plaintiff excepted.

" 2d. If you find from the evidence that one E. C.
Marsh, acting for himself and his brother James S. Marsh,
did in the month of June or July, 1877, turn over and
deliver the machines in controversy to the defendant Wis-
well, or to Thomas H. Harrison as agent for Wiswell,
pursuant to a contract actually made and entered into, sub-
stantially as claimed by defendants, and that after that
time Harrison held the machines as agent for the defend-
ants or either of them, then you must find for the defend-
ants."

To the giving of which the plaintiff then duly excepted.

" 3d. Defendants claim the machines in controversy
under a contract which they claim to have made with J. S.
and E. C. Marsh, the same parties under whom plaintiff
claims. The court instructs you that a failure to put said
contract into writing would not invalidate it, if the parties
had in fact made such a contract and partly performed it,

and the parties only intended the writing when made to be a memorial of the terms they had already agreed on and partly carried into effect. Under such circumstances the contract would be valid although it was never reduced to writing."

To the giving of which plaintiff then duly excepted.

" 4th. The court instructs you that if you find from the evidence that the said James S. Marsh and E. C. Marsh did make the contract with the defendant Wiswell substantially as claimed by said defendant, and that the machines in controversy in this action were delivered to said defendant, or to Thomas H. Harrison, as his agent, under and by virtue of said contract, and as a part performance thereof, and that said defendant Wiswell was able and ready to perform said contract fully on his part, and only failed to fully and completely perform it on his part on account of the failure and refusal of said James S. and E. C. Marsh to perform it on their part, and it was wholly the fault of the said Marshes that the contract was not performed by the parties to it, then the plaintiff cannot recover in this action, and you will find for the defendants and give a verdict in their favor."

To the giving of which plaintiff then duly excepted.

" 6th. If you find the contract was made between the Marshes and defendant Wiswell substantially as claimed by said defendant Wiswell, and that said defendant Wiswell delivered any personal property to said Marshes under said agreement, or tendered said personal property to said Marshes under said contract, then the title to said personal property passed to said Marshes, and they were from that time the owners of it, and if Wiswell afterwards took said property and converted it to his own use, said defendant Wiswell is liable to said Marshes or their assigns for the whole of said property, and the taking and conversion of said property by Wiswell under such circumstances would not in itself amount to a rescission of the con-

tract and authorize said Marshes or their assignees, the plaintiff, to sue Wiswell for the value of the machines in controversy, if they were turned over to said Wiswell under said contract and as part performance thereof. Provided that prior to the time said Wiswell took and converted said property so delivered or tendered to said Marshes, said Wiswell had complied or offered to comply with the terms of said contract on his part to be performed, and had duly tendered to said Marshes the deed or deeds and assignments of leases to be by him given and transferred to said Marsh."

To the giving of which plaintiff then duly excepted.

"7th. If you find from the evidence that there was a contract made between said Marshes and defendant Wiswell substantially as claimed by said defendant, and that said defendant was ready and willing to fully and completely perform said contract on his part, and delivered or tendered the personal property to said James S. Marsh and E. C. Marsh and tendered to them a deed properly executed to the lands in Coffee county, Kansas, and leases properly signed to said James S. Marsh and E. C. Marsh of the school lands in Gage county, Nebraska, and that said Wiswell was able by said instruments to properly convey to said James S. Marsh and E. C. Marsh the title to said real estate in Kansas and the leases of said school lands in Gage county, Nebraska, and that said James S. Marsh and E. C. Marsh positively refused to accept said deeds and leases, and positively refused to perform the contract, and it was wholly their fault that said contract was not performed, the court instructs you that said defendant Wiswell was not bound to keep said contract good, and the fact that said Wiswell afterwards used said personal property and disposed of said real property to other persons will not of itself entitle plaintiff to recover against defendants in this action unless you believe from the evidence that said contract was not intended by the parties

to it to be binding upon them until it was reduced to writing, and it never was so reduced to writing."

To the giving of which plaintiff then duly excepted.

As before stated, there being evidence tending to prove a rescission of the contract between Wiswell and the Marshes for the exchange of land and live stock on the part of the former, for the machines and money on the part of the latter, by the taking back and disposing of the land and live stock by Wiswell after the Marshes had failed to pay the money, an instruction stating the supposed facts of the case, and telling the jury that if they believed such facts from the evidence they should find for the defendants, but which instruction ignored and left out the question of rescission and the evidence thereof, is not only logically erroneous but well calculated to mislead the jury, notwithstanding the fact that in other and former instructions the court had properly instructed the jury upon the law of rescission and its application to the case before them.

· Instruction No. 4 of the above instructions, given on the part of the defendants, is open to this objection. Whatever may have been the meaning intended by the counsel who drew, or the court which gave, this instruction, I think the jury may have understood and did understand it to mean substantially that whatever might be their belief from the evidence as to the rescission of the contract by Wiswell by resuming the possession and disposing of all the property, real and personal, which was, or was to be, the consideration for the machines in question, nevertheless, if they should find from the evidence that the Marshes did make the contract with the defendant Wiswell substantially as claimed by the defendants, and that the machines in controversy in this action were delivered to Wiswell, or to Harrison as his agent, under and by virtue of said contract and as a part performance thereof, and that said defendant Wiswell was able and ready to perform said contract fully on his part, and only failed to fully and

completely perform it on his part on account of the failure and refusal of the Marshes to perform it on their part, and it was wholly the fault of the Marshes that the contract was not performed by the parties to it, then the plaintiff cannot recover in this action, and they must find for the defendants, etc.

I have given attention to the able argument of counsel for defendants in error to the effect that defendant Wiswell, having tendered the Marshes the deeds and leases to the lands, and having actually delivered to them the articles of personal property, stock, etc., was not required by law to keep such tender good, but, having made other disposition of the land and resumed possession and disposed of the personal property, might still retain the machines. The chief fault of the argument, as well as of the authorities cited in support of it, is, in my opinion, that the law of tender does not apply to the case. The cases cited are mostly applicable to tender in payment of debts, payable in specified chattels at a specified time and place. There had been no credit given in the case at bar. So there was no tender in payment of a debt. If the contract between the Marshes and Wiswell was a completed one, as claimed by the defendants, I think there can be no doubt of the right of Wiswell to retain possession of the leases and of the Kansas land until the Marshes paid the money or gave the bankable note spoken of by the witnesses, or to resume the possession of the personal property on the Giddings place, upon the repudiating of the trade by the Marshes. See *Paul v. Reed*, 52 N. H., 136; *Allen et al. v. Hartfield*, 76 Ill., 358; *Wabash Elevator Co. v. First Nat'l Bank of Toledo*, 23 O. S., 318; *Goldsmith v. Bryant*, 26 Wis., 34, and *Fenelon v. Hogoboom*, 31 Id., 172. But upon making such a disposition of the property as put it out of his power to finally comply with his part of the contract he took upon himself the duty of restoring to the Marshes whatever had passed to him under the contract. See *Eaton v. Redick*,

cited by counsel for plaintiff in error, and cases there cited.

The judgment of the district court is reversed and the cause remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.

THE other judges concur.