# SAMUEL FLOWER

## v.

# JOHN V. FARWELL ET AL.

1. FRAUD TO INVALIDATE CONTRACT OF SALE.—Mere legal fraud will not afford ground for invalidating contracts for sale of goods or for maintaining an action for damages; there must be moral fraud or dishonest intention.

2. SAME.—Where a person obtains goods under the pretense of a purchase, with the intention not to pay for them, but with the design to cheat the vendor out of them, this would be such a fraud as would invalidate the sale and lay the foundation for an action at law.

3. INSTRUCTIONS.—In an action on the case for fraud in the purchase of goods, an instruction that "if a merchant buys goods on credit without intending to pay for them, this is a fraud upon the seller and will entitle him to avoid the contract of sale and sue for the value of the goods in an action based on such fraud; that if the jury believe from the evidence that defendant obtained such goods upon credit without intending to pay for them, then their verdict should be for plaintiffs." *Held*, erroneous.

APPEAL from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding. Opinion filed January 27, 1886.

This action was case brought by Farwell & Co. against Flower, to recover damages for fraud and deceit in the purchase by the latter of certain bills of goods, of the former. The first count of the declaration alleges a pretended purchase by defendant of plaintiffs of said goods, with the fraudulent design on defendant's part of not paying for said goods, and of cheating and defrauding plaintiffs out of the same. The second alleges that the goods were obtained by defendant by means of false and fraudulent representations as to his financial ability, and with the like design. The plea was not guilty. On the trial, the plaintiffs introduced testimony tending to show that August 15, 1883, the defendant made, at plaintiff's store, a statement in writing, to the effect that his then stock of merchandise, notes and accounts amounted to $9,000; that his cash on hand was $400; that his property was insured

Flower v. Farwell.

for $5,000; that he owed not to exceed $2,000; that since said date he had bought of plaintiffs goods to the amount of about $1,800 on credit, which had been paid for; that February 21, 1884, defendant bought on credit a bill of goods amounting to $305.52; one March 4th, 1884, amounting to $3; one March 5, 1884, to $6.22; one March 10, 1884, to $15.68; amounting in all to $419.97, which he had not paid. The court permitted plaintiffs, against the objections of defendant, to introduce in evidence a letter written by defendant Dec. 31, 1883, to one Brombach, containing certain statements as to his financial condition. There was no evidence which even tended to prove that the representations made by defendant in the written statement of Aug. 15, 1883, were any of them false; nor that those in said letter were false, or to connect said letter with any scheme on the part of defendant affecting the plaintiffs, or that the statements of the letter were connected with any fraudulent purpose. The only evidence tending to prove that the purchases in February and March, 1884, were fraudulent, was that March 21 and 24, 1884, several judgments by confession were entered up against him, and that about that time he failed in business.

The court instructed the jury for plaintiffs in these words: "If a merchant buys goods upon credit without intending to pay for them, this is a fraud upon the seller and will entitle him to avoid the contract of sale, and sue for the value of such goods in an action based on such fraud. If, therefore, the jury believe from the evidence that he obtained such goods upon credit and without intending to pay for the same, then your verdict should be for the plaintiffs, for the value of said goods."

The jury found the defendant guilty and assessed plaintiffs' damages at $419.77 for which they had judgment and defendant brings the record here for revision.

Messrs. Moses, Newman & Reed, for appellant; cited Johnson v. Beeney, 5 Bradwell, 601; Simpkins v. Berggren, 2 Bradwell, 101; Murphy v. Brace, 23 Barb. 561.

As to instructions: Hanchett v. Mansfield, 16 Bradwell, 409; Catlin v. Warren, 16 Bradwell, 418.

Messrs. Flower, Remy & Gregory, for appellees; that if a purchaser knows himself to be insolvent and has no reasonable expectation of paying for the goods, it is sufficient evidence of fraud to avoid the sale, cited Davis v. Stewart, 8 Fed. Rep. 803; Talcott v. Henderson, 31 Ohio St. 162; Powell v. Brad-lee, 9 Gill & J. 220.

McAllister, J. In the leading cases of Pasley v. Free-man, 3 Term R. 51, and Haycraft v. Creasy, 2 East, 92, the doctrine was clearly enunciated that in order to recover damages on the ground of fraud, mere legal fraud was not sufficient; that moral fraud or dishonest intention was indispensable. But it seems that after those decisions some of the English courts drifted away from their principles and they were lost sight of or obscured by various theories respecting what constituted *fraud*, in the sense that it would invalidate sales of goods or afford the basis of an action for damages, so that mere fraud in law, without moral fraud, had come to be regarded as sufficient for either purpose. But both the Exchequer Chamber and Queen's Bench have at length gone back and anchored upon the principles of the above cases, and it is now settled that mere legal fraud will not afford ground for invalidating contracts for the sale of goods, or for maintaining an action for damages; that there must be moral fraud or dishonest intention. Collins v. Evans, 5 Adol. & El. (N. S.) 820; Bailey v. Walford, 9 Id. 197; Ormund v. Huth, 14 Mees. & Welsb. 651; 2 Smith's Leading Cases, 105–6.

Mr. Benjamin, in speaking of the remedies of vendors of goods, says: "Next, it is now settled that there can be no fraud without dishonest intention—no such fraud as was formerly termed *a legal fraud.*" Benj. on Sales, 2d Am. Ed. § 429.

So far as the doctrine has received full consideration and may be deemed settled in this State, it is entirely in harmony with that view. The case of Henshaw v. Bryant, 4 Scam. 106, was the first of that class. It is there stated to be this: "When a person who knows himself to be insolvent, by means of fraudulent pretenses or representations, obtains pos-

Flower v. Farwell.

session of goods under a pretense of purchase, with the intention not to pay for them but with the design to cheat the vendor out of them, a court of chancery will set aside the sale and order a return of the goods if they have not passed into the hands of a *bona fide* purchaser, or the vendor may bring replevin or trover for them." That statement of the law was expressly re-affirmed in Patton v. Campbell, 70 Ill. 75.

We may readily concede that this statement of the law by our Supreme Court embraces one element as a necessary requisite, which is held by a preponderance of the authorities outside this State not to be necessary, viz., that in addition to the intention not to pay for the goods and design to cheat the vendor, there should be fraudulent representations by the buyer. But the necessity of such false representations, or some trick or artifice capable of proof, is held by several courts to be imperative. Smith v. Smith, 21 Penn. 367 ; Backentoss v. Speicher, 31 Id. 324 ; Bell v. Ellis, 33 Cal. 620 ; per Sheldon, J., in Nichols v. Piner, 18 N. Y. 295.

As opposed to that view, see Shipman v. Seymour, 40 Mich. 283 ; Stewart v. Emerson, 52 N. H. 301 ; Donaldson v. Farwell, 93 U. S. 631. These cases go upon the theory that a preconceived design never to pay, which involves a positive design to cheat and defraud, or known insolvency, with the intention not to pay for the goods, and the fraudulent concealment of that intention from the seller, are sufficient; and we agree with that conclusion. But eliminating that element from the statement of the law, in Henshaw v. Bryant, and Patton v. Campbell, *supra*, then the rule is, that when a person obtains goods, under the pretense of a purchase, with the intention not to pay for them, but with the design to cheat the vendor out of them, this would be such a fraud as would invalidate the sale, and lay the foundation for an action at law.

That is precisely what the plaintiffs below have averred in the first count of their declaration. The second count is upon fraudulent representations ; but there was no evidence tending to support it, sufficient to be submitted to the jury. Although there was some slight evidence tending to support the first count, yet it was so slight and unsatisfactory, that any inac-

curacy in plaintiffs' instructions, calculated to mislead the jury, will be regarded as fatal. One of their instructions was, that "If a merchant buys goods on credit without intending to pay for them, this is a fraud upon the seller and will entitle him to avoid the contract of sale and sue for the value of the goods, in an action based on such fraud ; that if the jury believe from the evidence that defendant obtained such goods upon credit without intending to pay for them, then their verdict should be for plaintiffs."

It will be perceived that this instruction makes no reference to the question whether the purchase was made with the intention to cheat the plaintiffs out of their goods, which is expressly averred in their declaration, or to the insolvency of the defendant, and knowing it, the purchase with intention not to pay, and the fraudulent concealment of that intention from the plaintiffs. There is nothing of the kind ; but the mere absence of any intention is, by it, declared to be a fraud as matter of law. If this instruction should receive the sanction of the courts, then it would be available in supplying the want of evidence tending to prove a fraudulent intent, at the time of a purchase, and enable the sellers of goods upon credit, where the buyers have failed, to turn nearly every action for the collection of such debts into an action on the case for fraud, and thereby defeat the beneficent purposes of that provision of the constitution which abolishes imprisonment for debt.

In Catlin v. Warren, 16 Bradwell, 418, we held just such an instruction bad. At the time that case was heard, that of Hanchett v. Mansfield, Id. 407, was also submitted. The counsel for appellees in this present case were counsel in both those cases. In the latter they were on the other side of the question involved here, and cited the case of Burrill v. Stevens, 73 Maine, 395, to sustain the proposition that there must be a positive design on the part of the buyer, at the time of the sale, not to pay for the goods. We adopted that view, citing Burrill v. Stevens, and decided the case in their favor. But they also cited the same case in Catlin v. Warren, where they were endeavoring to support an instruction given at their

instance, the same as that in this present case.    We followed
Burrill v. Stevens, and other cases, and decided Catlin v.
Warren, against them.    The counsel now quarrel with that
decision, and speaking of the case from 73 Maine, they say :
" It is sufficient to say that it has been expressly and repeated-
ly repudiated by courts of the highest authority."

If the learned counsel had succeeded in making that state-
ment good by citations, and shown that they had found out
about that repudiation since they urged it upon our attention
in the cases referred to, we frankly say that while we would
have been surprised at the discovery, it would have materially
added to the high respect we already entertained for them.
But they failed to find and cite any case which expressly or
indirectly refers to that of Burrill v. Stevens, or any which
are in any material degree in conflict with it.    They take the
position that a positive intention never to pay is not neces-
sary ; and to sustain the instruction they must take that posi-
tion ; and that a dishonest intention, in fact, is not essential.
In the cases cited by them they seem to have wholly overlooked
the distinction between the evidence to prove and the ulti-
mate legal fact to be proven.    For instance, to show that no
actual or positive intention on the part of the buyer to cheat
is necessary, they cite Talcott v. Henderson, 31 Ohio St. 162.
The court sums up its views by these words:  " While, there-
fore, a purchase of goods by an insolvent vendee, who con-
ceals his insolvency *with intent to injure* the vendor, is fraud-
ulent and voidable, yet a purchase under like circumstances,
save only that *such intent* is absent, is not in law, fraudulent."

Johnson v. Morrell, 2 Keyes, 665, is another case cited by
them to prove that no actual or positive intent to injure or
defraud is necessary.    Peckam, J., says:  " To avoid the
sale as fraudulent, the jury must be satisfied by proof that the
purchaser *intended* by the purchase, *to defraud the vendor ;*
that he never intended to pay for the goods."

The case of Allen v. Hartfield, 76 Ill. 358, is cited to sus-
tain the instructions.    That case is so plainly distinguishable
upon its facts, from this, that it is not deemed our duty to go
into an analysis of it.    There is a principle involved in this

case so important that it should not be permitted to be obscured or overthrown by the loose *dicta* of any judges, however eminent. We are of opinion that the instruction was erroneous and misleading; and also that the court erred in admitting in evidence, against the defendant's objections, the letter of defendant to Brombach. If there had been evidence tending to show that he had defrauded both Brombach and the plaintiffs, and that the two acts or transactions were in pursuance of a common scheme embracing both, then the letter, if it was proposed to follow it up, by showing that defendant thereby defrauded Brombach, would have been admissible. But the case is entirely wanting in any such proof, so the letter was not admissible. Jordon v. Osgood, 109 Mass. 457.

The judgment will be reversed and the cause remanded.

Judgment reversed.