## J. B. JOHNS *et al.* v. HESTER A. HEAD.

REPLEVIN, *Lies When.* The defendant's agent, under chapter 193 of the Laws of 1872, took two of the plaintiff's cattle into custody. On the next day, and before the defendant had any knowledge of the same, he being twelve miles away, the plaintiff's agent demanded of the defendant's agent the surrender of the cattle, and tendered to the defendant's agent at the time a sufficient amount of money to pay all damages and legal charges, and the defendant's agent refused to surrender the cattle, upon the ground that he had no authority to do so. On that same day the defendant was informed by his agent with respect to what had happened. The defendant gave no notice to the plaintiff's agent or to the plaintiff with respect to the matter, and did not within five days thereafter, or at any other time, commence an action for damages. Six days after the cattle were taken up the plaintiff demanded the cattle of the defendant, and he in effect, though not in specific words, refused to surrender the cattle, except upon a condition which was not in law any excuse or justification for keeping them, and afterward the plaintiff commenced an action of replevin to recover the cattle. *Held,* That the action may be maintained.

*Error from Saline District Court.*

REPLEVIN, to recover a two-year-old bull and a cow. Judgment for the plaintiff *Head,* at the May term, 1886. The defendants bring the case to this court. The material facts appear in the opinion.

*Garver & Bond,* for plaintiffs in error.

*Joseph Moore,* and *W. P. Quinby,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of replevin, brought originally before a justice of the peace of Saline county by Hester A. Head against J. B. Johns and J. M. Johns, partners as Johns Brothers, to recover two head of cattle, to wit, a two-year-old bull and a cow. The case was appealed to the district court, where a trial was had before the court and a jury, and a verdict and judgment were rendered in favor of the plaintiff and against the defendants; and the defendants, as plaintiffs in error, bring the case to this court.

It appears that the Johns Brothers lived in Salina, and owned a farm about twelve miles distant therefrom, in the country. The plaintiff and her husband A. R. Head, and their family, resided upon and occupied an adjoining farm, the title to which was in A. R. Head. The Johns Brothers owned some live stock which they kept upon their farm, and the Heads also owned some live stock which they kept upon their farm, and the stock from one farm sometimes trespassed upon the other farm; for instance, the hogs of the defendants trespassed upon the farm of the Heads, two of which hogs were taken into custody by Head under the statutes. Also, the cattle in question trespassed upon the defendants' farm at different times, and were finally taken into custody by the defendants as hereafter stated, under chapter 193 of the Laws of 1872. (Comp. Laws of 1885, pp. 934, 935.) Out of these various occurrences considerable ill-feeling arose between the parties. The Johns Brothers had two or three men employed to work for them upon their farm, and they themselves were also there a large proportion of the time. They instructed these men, and especially Charles D. Evarts, who was their nephew, to take up any stock which might come upon their premises. Afterward, and on Sunday evening, November 8, 1885, the cattle in question got loose from the Heads' farm and strayed upon the premises of the Johns Brothers, and Evarts took them up as he had been previously instructed to do. These cattle belonged to Mrs. Head, the plaintiff in this action. On the next morning A. R. Head, the plaintiff's husband and agent, and the general manager of her property and business, and also Robert A. Brown, the plaintiff's special agent, came to the farm of the Johns Brothers and demanded of Evarts the cattle in question, and offered to Evarts at first $1 and afterward $2, to pay for any damages which the cattle might have committed or caused. It is not shown, however, that the cattle committed or caused any damage. Evarts told them that he had no authority to surrender the cattle, and refused to do so. On that same morning Evarts met the Johns Brothers between Salina and the farm, and told them all that

had happened. The Johns Brothers were then on their way to the farm, and arrived there about noon. They kept the cattle, without giving any notice to any of the Heads or to Brown, and without commencing any action against anyone for damages. On the next Saturday, November 14, 1885, A. R. Head saw one of the Johns brothers in Salina, and again demanded the cattle, but Johns refused to surrender them except, possibly, upon a certain condition which would not amount to any legal justification or excuse. Afterward the plaintiff commenced this action.

It is admitted that the cattle in controversy belonged to Mrs. Head, and that she had the right to the immediate possession thereof unless the defendants' claim thereto was paramount to hers. It is also admitted that the defendants through Evarts rightfully took the cattle up, and rightfully obtained the possession thereof in the first instance, leaving the following as the only disputed question in the case, to wit: Did the possession of the cattle by the defendants at any time after they were taken up and before the commencement of this action become wrongful? The defendants claim that it did not. They claim that the demand made upon Evarts and the tender made to him by the plaintiff's agents were insufficient, for the reason that Evarts was at the time a mere servant of the defendants having no authority to surrender the cattle to anyone, and this although in fact Evarts was the person who actually took the cattle up, and who in fact had the actual possession, custody and control thereof, and this although the defendants were at the time twelve miles away, at Salina, without any knowledge whatever that the cattle had ever been taken up. And the defendants also claim that "what took place in Salina between Head and Johns [that is, the second demand] cannot constitute a demand and refusal, because the property was not there, and there was no positive refusal to deliver the cattle if called for." The defendants further claim that both these demands are insufficient for the reason that it was not disclosed at the time of making these demands that the cattle belonged to Mrs. Head, but it was supposed at the time by the Johns

Brothers and by Evarts that they belonged to A. R. Head; and it is claimed that they were demanded in the name of A. R. Head. We think, however, for the reasons hereafter to be given, that the possession by the defendants of the aforesaid cattle became wrongful after they were taken up by Evarts and before the commencement of this action. In the first place, it may be claimed with great plausibility, if not with absolute correctness, that the demand made upon and the tender made to Evarts were entirely sufficient. ( *Goldsmith v. Bryant*, 26 Wis. 34; *Ratcliff v. Vance*, 2 Mills S. C. 239; *West v. Kimball*, 1 Bailey S. C. 193.) Evarts took the cattle up; had the actual possession, custody and control of the same; the Johns Brothers were twelve miles away, at Salina, and did not have the slightest knowledge that the cattle had been taken up. It would therefore seem that the demand made upon Evarts and the tender made to him ought in all justice and fairness and in law to be sufficient. What if the Johns Brothers had at the time been one hundred miles away, or out of the state, and non-residents? Besides, the Johns Brothers were afterward informed of this demand and of this tender and of Evarts's refusal to surrender the cattle, and they never repudiated Evarts's acts, but really approved the same and ratified them. And further, the cattle were taken up on November 8, 1885, and the defendants failed to give any notice, as the statute requires, to the owner thereof, or to her agents, or to any other person in charge of the cattle within 48 hours thereafter, or at any other time, unless the interview with Evarts on November 9, 1885, or the interview with Johns on November 14, 1885, constituted such a notice. (See Laws of 1872, chapter 193, § 4.) And the defendants failed in still other particulars. They did not within five days after the taking up of the cattle, or at any other time, commence any action against the owner of the cattle for any damages which the cattle may have committed or caused, and hence at the end of the five days they lost all lien which they may have had upon the cattle and all right to retain the same for any such damages. Section 3 of chapter 193 of the Laws of 1872,

(Compiled Laws of 1885, pp. 934, 935,) the chapter under which these cattle were taken up, reads as follows:

"SEC. 3. Any person injured in property by the running at large of any of the animals specified in the said order of the board of commissioners shall have a lien, without regard to fences, upon the animals so running at large, for the full amount of all damages committed by them upon the property of said person, from the time of the commission of said injury, and may take the same into custody until all such damages are paid: *Provided,* That the person so taking said animals into custody shall not have the right to retain the same for more than five days without commencing action against the owner thereof for such damages."

After these five days had elapsed, and on November 14, 1885, A. R. Head again demanded the cattle of one of the Johns brothers, and, notwithstanding all the quibbling and evasions apparent in the evidence, he refused to surrender them. He himself, among other things, testified as follows:

"Mr. Head said, 'I understand you have some of my cattle;' I said, 'We have some cattle over there;' 'Well,' he says, 'I demand them;' I told him, 'All right, demand them; that we had demanded our hogs, and he wouldn't let them go.' He said, 'I am going to have them;' I said, 'All right; get them.' I told him to return the hogs and we would return the cattle."

This was certainly in effect a refusal to surrender the cattle unless Head should first surrender the hogs, which Head never agreed to do, and which so far as is shown in this case he was not in duty bound to do; but even if he was, that matter is wholly immaterial to this case. Head's testimony upon this subject of the demand and refusal is still more unfavorable to the Johns Brothers than this testimony of Johns, and the jury both generally and specially found in favor of Mrs. Head and against the Johns Brothers. Head among other things testified that instead of using the words "my cattle," as Johns testified that he did, he in fact used the words "stock" "belonging to *us,*" or words of similar import. Head also testified that Johns gave him no satisfaction, and did not consent to a surrender of the cattle upon any terms,

not even upon a condition.    But there is no use of discussing
these matters.    It was a sufficient demand and a sufficient re-
fusal.    All the parties, the Johns Brothers and Evarts, as well
as Head and Brown, knew what cattle were taken up, what
cattle were wanted; that a demand for them was intended at
each of the times at which it is now claimed a demand was
made, what cattle were intended to be demanded, and to whom
the cattle belonged; or at least they all knew that they be-
longed to the Head family, although probably the Johns
Brothers and Evarts supposed at the time of the two demands
that they belonged to A. R. Head; and no question was raised
at the time as to the ownership of the cattle, or as to Head's
right or authority to make a sufficient demand for them, or
as to the sufficiency of the demands that were made, or as to
Head's or Brown's right or authority to do anything that was
necessary to procure the possession of the cattle.    And both
Head and Brown had ample authority to make the demand,
and to do whatever was necessary to procure the possession of
the cattle.    No claim was made at the time of either demand
that the cattle had caused any damage or expense; and no
claim was made for any damage, expenses or charges caused
by the cattle; nor was the refusal to surrender the cattle based
upon any such things; and certainly there was a refusal at the
time of each demand, not in specific terms at the last demand,
it is true, but in effect, and in terms which could not be mis-
taken.    This second demand and refusal were probably suf-
ficient in and of themselves to render the possession of the
Johns Brothers wrongful from the time of such demand and
refusal, even if up to that time they had been holding the
cattle lawfully and rightfully, and had obtained and retained
a lien upon them for damages.    But taking this demand and
refusal along with all the other facts in the case, and it cannot
be held that the possession of the cattle by the Johns Brothers
was after such demand and refusal rightful.    The jury that
tried this case found specifically as well as by their general
verdict, that both the demands made in this case were suf-
ficient.    They also found that the tender made in the case was

sufficient, and that the amount tendered was sufficient to pay all the damages and legal charges; and under the evidence we think their verdict and their special findings are undoubtedly correct as findings of fact; and while the first demand and tender and refusal are perhaps sufficient in law to render the defendants' possession wrongful, we think the second demand and refusal, with the preceding facts, are undoubtedly sufficient in law to render the defendants' possession wrongful.

It is unnecessary to discuss any of the other questions presented by counsel. We do not think that any material or substantial error was committed by the court below, and therefore its judgment will be affirmed.

All the Justices concurring.