## MATTHEWS *v.* WEILER.

Opinion delivered May 13, 1893.

*Fraud—Counterclaim—Unliquidated damages.*

> In a suit to recover the price of merchandise, the vendee is not entitled to offset a claim for unliquidated damages growing out of a contract not connected with the subject of the action, notwithstanding the vendor is a non-resident and has no property in the State, if the vendee fraudulently obtained possession of the goods by promising to pay cash for them.

Appeal from Jefferson Circuit Oourt.

JOHN M. ELLIOTT, Judge.

*J. M. & J. G. Taylor* for appellant.

1. The demurrer to the counterclaim or setoff should have been sustained. Unliquidated damages growing out of a transaction separate and distinct from the purchase in controversy cannot be recouped. 45 Ark. 284; 42 *id.* 208; 120 U. S. 638-9.

2. Appellee is estopped by fraud. 2 Herm. on Estoppel, secs. 944, 995; 33 Ark. 468; 37 *id.* 47; 10 Allen, 437; 11 *id.* 351; Bigelow on Estoppel, p. 504; Tiedeman on Sales, secs. 151, 170.

*N. T. White* for appellee.

1. Section 96, Civil Code of Kentucky, is in substance the same as sec. 5036 of Mansf. Digest, and under the decisions of Kentucky such counter-claims are allowed. 11 S. W. Rep. 24.

2. By electing to sue for the purchase price of the goods, the fraud, deceit or tort is waived. 25 Ark. 10; 27 *id.* 365; 31 *id.* 158. This is what appellants did in this case. Defendants are not estopped. Benjamin on Sales (rev. ed. by Corbin), p. 980, sec. 1125; 24 How. 407; 47 Md. 112; 10 Blatchf. 178; 5 N. J. Eq. 33, 41; 4 Rawle, 273; 46 Conn. 396. The sale having been affirmed with

full knowledge of all the facts, all special right to re-
claim goods was lost, and the price of the goods became
a simple contract debt.   See 46 Conn. 380; 3 Whart.
369; 4 Mass. 502, 505; 5 Met. 52; 111 Mass. 270, 272;
83 N. Y. 300; 46 Ark. 245; 35 Pa. St. 523; Bigelow on
Estoppel, p. 333.

BATTLE, J.  Sophia Weiler, the appellee, was a
merchant in Pine Bluff, in this State.   She ordered a
"soda water generator" from the appellants, who were
merchants in New York City.   They shipped it, with
instructions not to deliver until the draft of appellants
for the purchase money, which was attached to the bill
of lading, was paid.   The appellee paid the draft and
received the generator.   After receiving it, she claimed
it was a second-hand machine, and not such as she had
ordered, and wrote a letter to appellants, complaining of
that fact.   They answered, denying that it was not
such as she had purchased.   This was in August, 1890.
Nothing more was said or done by any one as to the
generator, which was paid for, received, and used with-
out further complaint by Weiler.

Meyer Weiler, the husband of the appellee, who
conducted her business, contrived a scheme, which is ex-
pressed in his language as follows:   "They owed me
for an old generator I bought from them, and I ordered
these goods for the sole purpose of getting even with
them.   They had shipped me an old generator, when I
ordered a new one, and I could not find any goods here
to attach to make my money out of, and I could see no
other way to get even with them."   He further said
that appellee did not intend to pay for the goods when
he ordered them.

Appellants shipped the goods, with instructions not
to deliver until their draft for the purchase money was
paid.   The goods were ordinary articles of merchandise,
and had no connection with the generator which had

been shipped and received several months before. Weiler, in order to get possession of them, wrote appellants a letter, complaining of the manner in which they were shipped, and saying that, if they would not wound his sensibilities by shipping in such a manner, he would immediately, upon being allowed to possess himself of the goods in Pine Bluff, remit them cash therefor. They granted his request, and allowed him to receive them at Pine Bluff, and directed the return of the draft which accompanied the bill of lading. Having obtained possession in the manner indicated, appellee refused to pay for them, and appellants brought this action to recover the purchase money. Appellee answered, admitting the indebtedness for the goods last ordered, but said that appellants were indebted to her in a greater sum than the amount of her indebtedness to them, to-wit, in the sum of $205, in this manner: Sometime in August, 1890, she ordered "a good new, first-class copper generator," to cost the sum of $380, and they agreed and promised to ship to her the same, and to receive in full payment for it the sum of $365, paid on its arrival at Pine Bluff. They shipped to her a generator, and upon its arrival, relying on the promise and agreement of appellants, without examining it, she paid the $365. Upon unpacking and examining it, she found that it was an old, second-hand generator, and not worth exceeding $175. She demanded of appellants a compliance with their contract, and they refused, to her damage in the sum of $205. And she further said that the appellants were residents of the State of New York, and have no property in this State known to her out of which she can recover her claim by a separate suit, and that they were beyond the jurisdiction of the court.

Appellants replied by denying that they failed to comply with their contract as to the generator, and set-

ting forth the facts as to the goods last ordered as here-inbefore stated.

The defendant recovered judgment, and plaintiffs appealed.

The cause should have been heard in equity, and we will dispose of it accordingly. *Trulock* v. *Taylor*, 26 Ark. 54.

- The matter set up in the answer of appellee had no connection, proximate or remote, with appellant's cause of action. She may have had a claim against the appellants for the damages she sustained by reason of the fraud in the sale of the generator ; but it did not arise out of the contract or transaction set forth in the complaint in this action as the foundation of appellants' claim, and is not connected with the cause of action, and therefore cannot be pleaded in this case as a counter-claim or by way of recoupment. Moreover, the damages are not liquidated, and could not, ordinarily, be the subject of set-off, either in a court of law or equity. But it is insisted by appellee that an equity attaches to have them allowed as a set-off in this action by reason of the non-residence of the appellants, and the fact that they have no property in this State. To sustain this contention she cites *Forbes* v. *Cooper*, 11 S. W. Rep. 24. In that case the Kentucky Court of Appeals held that in an action for the price of merchandise, damages arising from the non-performance of a building contract are not available, by way of a counter-claim, under the civil code of Kentucky, which defines "a counter-claim as a cause of action in favor of a defendant against a plaintiff, which arises out of the contract or transaction stated in the petition as the foundation of plaintiff's claim, or which is connected with the subject of the action ; " but that "such damages, although unliquidated, are available to the defendants " as an equitable set-off, " when plaintiff is a non-resident, having no property in the State."

In *Wray* v. *Furniss*, 27 Ala. 471, the court held that "a demand for unliquidated damages, arising from a breach of covenant of title may be set-off in equity against a note founded on an independent consideration, when the vendor is dead and his estate is insolvent," but, to make it available as an equitable set-off against an assignee of the note, the insolvency must be shown to have occurred before notice of the assignment.

In the cases cited the set-off for unliquidated damages was allowed by the court in the exercise of its equitable jurisdiction on the ground that the law could not give an adequate remedy in a separate suit, and it was necessary to prevent the defeat of the ends of justice.

Under our statutes, "a defendant may set forth in his answer as many grounds of defense, counter-claim and set-off, whether legal or equitable, as he shall have." Mansfield's Digest, sec. 5033.

In this case the appellee seeks equitable relief by way of set-off. Will a court of equity grant it, when to do so would be to aid her in the execution of a fraudulent design? The purchase of the goods for cash, the refusal to pay for them, and the effort to pay the price with a claim for damages was a fraud upon the appellants. *Wabash Elevator Co.* v. *First National Bank*, 23 Ohio St. 311; *Allen* v. *Hartfield*, 76 Ill. 358. Such acts are akin to the crime of obtaining property under false pretenses. To allow appellee's claim as a set-off would be a reward for fraud, and virtually make the court a participant in a fraudulent scheme. Will equity, which detests and condemns fraud in all its manifold forms, aid in such a scheme? Certainly not. It is intolerant of fraud. No equitable right can accrue from it, especially when the fraud is perpetrated to acquire such a right. There is nothing in auch a case to move the conscience of a court of equity to the exercise of its

jurisdiction. Parties seeking relief in a court of equity should go there with clean hands. These are self-evident propositions, which need no argument or citation of authorities to support them. The class of cases on which appellee relies is no exception to the rule we have stated. Having no remedy at law in this action, she has none in equity.

The judgment of the circuit court is, therefore, reversed, and a judgment is ordered to be entered here in favor of appellants against appellee for the amount sued for by them, and interest thereon, and costs.