## McCLYMONDS v KANGESSER CO

Ohio Appeals, 8th Dist, Cuyahoga Co

No 12436.   Decided Feb 20, 1933

S. M. Parks, Vickery, Duffy & Vickery, Cleveland, for plaintiff in error.
H. B. Howells, Cleveland, for defendant in error.

LIEGHLEY, PJ.

As above stated, if these deeds had been accepted, and the money paid and mortgage delivered by plaintiff on this day, without reservation, protest or demand, undoubtedly the requirements of the above quoted provision would be merged in the covenants of warranty. But the witnesses for the plaintiff assert that such protest and demand was made and a contemporaneous

oral agreement entered into in respect thereto, which is denied by the witnesses for the defendant. This situation presented controverted issues of fact for the trial court. Plaintiff claimed such agreement was made, which was denied by the defendant. The defendant claimed the abstract was delivered on April 17th, which plaintiff denied. The trial court resolved these controverted issues of fact in favor of the plaintiff. We cannot say these findings are manifestly against the weight of the evidence.

Undeniably, this decision of the trial court establishes that a supplemental oral contract supported by the mutual promises of the parties was entered into at the time of the delivery of the deeds and the payment of the money, dealing with and having reference to the failure on the part of the defendant to deliver the required abstract and extending the time thirty to sixty days to close the administration of said estate and reflect same on the abstract.

The estate was not closed in sixty days. The delay was occasioned solely by the failure of the Federal Income Tax agency in submitting final inheritance tax figures. These were not forthcoming until June, 1926, although repeatedly requested in the meantime. This made it impossible for defendant to perform in the strict letter of the contract until then. Plaintiff at all times knew this and seems to have let matters drift, and proceeded to sell as many lots as he could. When the defendant failed to perform in this regard, either on April 17th or for sixty days thereafter, the plaintiff had a clear right to rescind said contract and bring an action for the recovery of damages for breach thereof, under the circumstances of this case and the finding of fact by the trial court that a supplemental oral agreement was entered into. The plaintiff did not elect to rescind, but to stand on his contract. If he had elected to rescind, the time and expense which he had lost and incurred, including the work done on the property or allotment until then, would have become items of damages as well as other matters that need not be enumerated.

Inasmuch as the plaintiff elected to keep the land, in face of the breach on the part of the defendant in failing to deliver the required specific abstract, the question is presented to determine just what items rightfully enter into an assessment of damages which the plaintiff thereby sustained. The amount that it would cost plaintiff to get all that defendant failed to give, the full cost of that in which he failed to perform, ought to be full satisfaction.

He testified that he refused title insurance. He says he insisted on the strict letter of the provision,—an abstract showing title clear in every respect. Sixty days thereafter, June 16th, he knew the defendant could not thus perform, yet he let matters drift along. While it drifted, he sold three hundred and ninety-six lots. In the sale of these, apparently, little or no sales resistance was met by the fact that this unadministered estate constituted a potential encumbrance. The evidence is that the estate was rich in assets and that plaintiff knew and took this into account in all his dealings with defendant. More than four years thereafter, claim is made that in the sale of seven of these lots plaintiff sustained damages by reason of this breach.

The party who insists upon impossible performance of a provision should be obliged to rescind his contract or take such performance as the other party can possibly give, plus such additional sum, if any be needed, that will make him whole, as the evidence may disclose.

The letter of Mr. Gooding under date of April 17, 1925, to Attorney Howells in which it is stated that the same was written in confirmation of a conversation had between them, and in which the offer is made to pay $3.00 per lot toward title insurance, discloses that the subject of more time and the cloud of the estate was discussed. While this sum may not have been the full cost, it evidences a commendable disposition toward adjustment of this difference. It is our opinion that in a case in which a party elects to compel performance rather than rescision, the fair and reasonable rule for the ascertainment of damages to which the plaintiff is entitled is the cost of title insurance, as a reasonable compensable substitute for the failure of the defendant to perform in respect to a matter at that time impossible of performance. If the proof should show a better and more equitable or comprehensive substitute, then it should be preferred. If there are other items of time and expense lost and incurred by the plaintiff during that period, naturally and reasonably flowing from this breach of the oral agreement to clear this land of this so-called encumbrance, the same should be included.

The whole complaint is that this potential encumbrance constituted a troublesome and aggravating obstacle to selling. The abstract, a mere opinion and certificate of the title company, is now asserted as the

cure-all in preference to title insurance, which pledges the financial resources of the same company.

Obviously, Kangesser could not go out under these circumstances and make damages almost a year later, and then claim the same to be a natural and unavoidable consequence of this breach. It might be said that he could not go ahead and sell lots by the delivery of a certificate of title showing this cloud, but he could have rescinded the contract and recovered his damages, or he could have deferred incurring damages upon his own initiative.

The Pfeiffer deal, out of which practically all of the items grew that were awarded by the trial court, is a clear illustration of damages incurred and made by the plaintiff. Long after the known breach of the defendant, Kangesser goes out and contracts about two lots theretofore sold to Pfeiffer for $19,500.00, as the sales agent of the plaintiff, The Kangesser Company. He says that in October, 1925, by reason of the fact that he was unable to give a clear certificate of title, he entered into a contract with Pfeiffer by the terms of which he agreed to have this estate administered and removed from the title within six and a half months. and then he claims that at the expiration thereof the estate had not yet been closed and he entered into another contract with Pfeiffer to return his payments. In the trial court the plaintiff claimed damages for some $5850.00 in the form of commissions paid by it to Kangesser as its agent in negotiating the Pfeiffer deal, and introduced evidence of a depreciation of the land, and was allowed the sum of $4875.00 therefor. These figures were not fixed as a result of judicial inquiry, but by voluntary agreement between plaintiff and Pfeiffer in which defendant had no part. Other like illustrations might be given from this record, all the result of activities of the plaintiff occurring for the most part after the breach and not directly flowing from the breach.

Damages are awarded for the wrongful acts of omission or commission of the defendant, not for losses incurred by the affirmative acts of the plaintiff. It was his duty to act to minimize damages, not to create them.

In the trial court it was claimed and the trial court allowed these items as the result of the breach of this oral contract. We think this was error.

If the correct rule had been applied, there is a failure of proof in this record. As stated above, the abstract introduced in evidence shows that parcels one and two were not and could not be encumbered with any cloud or encumbrance by reason of this unadministered estate, inasmuch as the defendant owned these parcels in her own right. The undisputed claim of counsel was that there was no proof to show that the Pfeiffer lots, or the other lots sold, were or were not in parcels one and two.

It is our opinion and judgment that this case should be reversed, particularly for the reason that the court failed to apply the proper rule of damages. The record does not contain the necessary proof to enable us to make the proper computation.

LEVINE and McGILL, JJ, concur in judgment.