## GORDON v
## GUARANTEE TITLE & TRUST CO

Ohio Appeals, 2nd Dist, Franklin Co

No 2886.   Decided Oct 13, 1938

Carl Valentine, Columbus, F. O. Snyder, Columbus, for plaintiff-appellant.

R. M. Lucas, Columbus, T. J. Keating, Columbus, for defendant-appellee.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law from a judgment in favor of the defendant.

It is the claim of the plaintiff that her action is at law for the sum of $1257.54 and interest on a count for money had and received in assumpsit. The trial judge refused to take this view of the cause plead, denied plaintiff the right to a jury and held that the only remedy which she had the right to invoke under the pleadings was the equitable one of rescission. The court then tried the case and found as heretofore indicated.

The pleadings are most voluminous, counsel having full appreciation of their import, it would serve no good purpose to set forth the multifarious recitals therein. As briefly as possible, the controversy arises over a purchase agreement between the Kessler-Patterson Company, known as the seller, and plaintiff, known as the purchaser made of date February 7, 1938, by the terms of which the plaintiff was to purchase lot No. 624 in the sub-division known as Colonial Hills Plat No. 2, for a consideration of $1080.00 and interest in monthly installments, together with all taxes and assessments due and payable on and after June 20, 1928. The seller was to cause the owner to execute and deliver to the purchaser a warranty deed for said premises, conveying to the purchaser, her heirs and assigns forever, the premises above described free and clear of incumbrances except taxes and assessments and any liens suffered or permitted to be placed upon said premises by the purchaser. The owner also at the same time was to deliver to the purchaser an abstract of title showing clear title to the premises, the deed to be subject to restrictions, limits, provisions and prohibitions contained on the back of the contract. There were nine such restrictions set forth.

The contract further provided that subject to its provisions it should be binding upon and inure to the benefit of the owner of the property, the seller, and their respective heirs, executors, administrators, successors and assigns.

The purchaser met all the obligations enjoined upon her under the contract, whereupon the defendant corporation, as trustee, executed and delivered a warranty deed to her, of date November 25, 1935. The covenant of warranty was in usual form, subject to nine specific exceptions set forth.

At the time of the delivery of the deed, defendant gave a title insurance policy covering the real estate deeded to the plaintiff. Thereafter, on the 25th day of November, 1935, the plaintiff filed her deed for record with the county recorder of Franklin County, Ohio. Later plaintiff observed that she had not received an abstract of title as provided in her contract, called upon the defendant therefor and on December 21, 1935, defendant delivered an abstract of title to the premises to her. On the 22nd day of May, 1936, the plaintiff by her attorney in a letter to defendant tendered a quit claim deed from herself to the defendant for the lot which she had agreed to purchase, stating that the consideration for the real estate had failed in that the deed given by the defendant to the plaintiff did not conform to the terms and conditions of the land contract and that the abstract of title showing title to the premises was not delivered as in the contract provided and that the plaintiff had elected to rescind the contract and demanded repayment of all sums theretofore paid under the contract.

Replying to this communication the defendant, on the 26th of May, 1936, said that it was acting as trustee 'for the owner of the division in which lot No. 624 was located and that if there were any errors in the deed or the abstract it would be glad to correct them. The deed was returned. The day succeeding the transmittal of this letter plaintiff instituted her action herein.

The amended petition recites the alleged infirmities of the defendant to make the deed; that it was not a deed of warranty and that it contains specifications in addition to and other than those appearing on the back of the land purchase contract and that the abstract of title does not show good merchantable title in the defendant in six particulars delineated. The answer recites in detail the character of defendant's ownership of the premises in question; that it was a mortgagee in a mortgage given by the Columbus Land Company, an Ohio corporation, of date September 6, 1927, on certain lands, including the Colonial Hills Plat No. 2 Addition, securing $100,000.00; that on or about June 1, 1928, the Columbus Land Company defaulted in its obligation, which default has been continuous thereafter; that on the aforesaid date the Columbus Land Company for valuable considerations conveyed the above described premises to the defendant

company, trustee, its successors, heirs and assigns, with full and complete authority and power to subdivide and plat the premises described * * * and to vest in the purchaser or purchasers title thereto in fee simple, free from any and all conditions under which said trustee may have the premises * * * full and complete authority to sell and convey said premises or any part thereof by deeds containing covenants of general warranty, binding the Columbus Land Company, its successors and assigns, and any deed of said trustee containing covenants of warranty with respect to said premises or any part thereof shall be held as the warranty of said Columbus Land Company, its successors and assigns alone.

Other terms of the trust deed are recited. The amount of the money paid by the purchaser under her agreement is set forth, as $1257.54, which sum it is agreed in the reply was the correct amount.

It is admitted that at the time of the execution and delivery of the deed the Columbus Land Company was not in existence but it is averred that the Colonial Park Realty Company was the owner and holder of all the right, title and interest of the Columbus Land Company in and to said contract made between the Kessler-Patterson Company with the plaintiff and in and to the trust agreement made between the Columbus Land Company and defendant as trustee. This averment is substantially admitted in the original reply.

The answer is extended. We shall not quote from it further at length. It recites the status of the contracting parties and others in title and particularly avers that the defendant is and was at all times willing, ready and able to deliver title as provided in the contract and the abstract in conformity thereto and sets forth what it had done by way of adenda to the abstract and what it was willing further to do.

The original reply is extended and together with the petition and answer completely sets forth all of the material facts incident to the transactions between the parties. The evidence only elaborates in particulars and it is doubtful if it extends materially the facts as appearing in the original pleadings. However, the plaintiff did file a new reply to the answer to the amended petition upon which the cause went to trial.

After issue was originally drawn upon the pleadings counsel for plaintiff moved for judgment thereon, which was overruled and this is the predicate for the first and probably the principal claim of error. The further claims epitomized are that upon the theory upon which the trial court heard the cause finding and judgment should have been made for the plaintiff.

We have been favored with the written opinions of Judge Reynolds on the motion for judgment on the pleadings and on the merits, which we have carefully read. We follow his reasoning and are of the opinion that his judgment was sound upon all phases of the law arising under the pleadings and the facts. We adopt ▮▮▮ his decision and might well be content to rest our opinion upon what was therein said.

We appreciate that assumpsit is a most flexible remedy and has probably been given wider scope of application than any action which has come to us from the common law. Though it is legal in character it has many of the qualities of an equitable suit and relief is only accorded under it when the equities clearly are found with the plaintiff.

Concluding an article on the history of assumpsit by J. Barnes in 2 Harvard Law Review, page 69, the author said:

"In its origin an action of tort, it was soon transformed into an action of contract, becoming afterwards a remedy where there was neither tort nor contract.

"Based at first only upon an express promise, it was afterwards supported upon an implied promise, and even upon a fictitious promise.

"Introduced as a special manifestation of the action on the case, it soon acquired the dignity of a distinct form of action, which superseded debt, became concurrent with account, with case upon a bailment, a warranty, and bills of exchange, and competed with equity in the case of the essentially equitable quasi—contracts growing out of principles of unjust enrichment.

"Surely it would be hard to find a better illustration of the flexibility and power of self development of the common law."

If it could be granted in this case that the plaintiff properly elected to proceed upon the count of money had and received and thereby was primarily entitled to a jury trial, even so the ultimate question for determination would have ▮▮▮ been for the court because there is no substantial dispute of factual situation, the difference only arising in the divergent legal conclusions reached by counsel for the parties. Likewise, it might be said that the plaintiff having insisted upon her right to proceed as on an action for money had and re-

ceived would, when that right of action failed, have been entitled to no other or further indulgence of the court. But the defendant pleading willingness and ability to perform the contract raised the issue in the judgment of the trial court whether or not plaintiff was entitled to rescission. With the conclusion that there was no showing justifying the equitable remedy of rescission we are in accord. The defects in plaintiff's title are minor in character and can in probability be corrected and if not are the subject of compensation in damages.

The contract was executed insofar as related to the delivery of the deed. If it is executory at all it is in that part which pertains to the abstract of title. ▮▮ The general rule is that where there is a pre-existing contract to make a deed the execution, delivery and acceptance of the deed merges the contract into the terms of the deed and waives the provisions of the contract. **Evants v Strade, 11 O. 480. Michael v Mills, 17 O. 601. Hill v Butler, 6 Oh St 207. McClymonds v Kangesser Co., 14 Abs 227.** Ordinarily a decree of rescission will not be granted if on a hearing of ▮▮ an action the vendor makes and tenders a perfect title unless the vendee has suffered great injury or loss by the delay and not then if such injury or loss can be fairly compensated by damages. **40 O. Jur. 1062,** citing **Wheeler v Bittner, 2 Abs 693; Lewis v White, 16 Oh St 444; McKay v Carrington, (C.C.) 1 O.F.D. 287.**

Attention must be paid in this case to the fact that plaintiff accepted the deed, filed it for record and made no attempt to rescind for a considerable time thereafter. Her rights under an executed contract and an executory contract are not the same but if the deed had not been made and she had stood upon her rights under the contract she could not have arbitrarily foreclosed the defendant from correcting any defects in the title or in tendering a deed to conform to the requisites of the contract. How, then, can it be said that her rights are enlarged after she has accepted the deed?

It is essential to the action of plaintiff, either for money had and received or for rescission, that it appear that the defendant refuses or is unable to ▮▮ perform. Likewise, where the action is for money had and received it must appear that there was an express or implied promise to repay the money advanced. There was no such ex-

press promise here nor could there be a promise implied to repay the money so long as it reasonably appeared that defendant could meet its obligations under the contract.

There is no claim nor could there by of any fraud or mutual mistake, deceit, duress, oppression or undue influence, which are the bases of rescission.

It is said in Tobin v Sundance, (Wyo.) 84 A.L.R. 903 that:

"Recovery can not be had in any action for money had and received, in the absence of a showing that the party seeking to compel payment is equitably entitled thereto."

And at page 914, quoting from 41 C. J. 28, 29:

" 'An action for money had and received, although an action at law, is governed by equitable principles, and in it plaintiff waives all torts, trespasses and damage'."

And in Larson v Thomas (S. D.) 57 A.L. R.:

"Refusal of a vendor to correct defects in his title or perform his obligations under the contract is a breach on his part which restores the purchaser's right to rescind."

A fortiori, a willingness to perform removes the right to rescind.

"A right to rescind is essential as a predicate to the action for money had and received."

Wright v Dickinson, 67 Mich. 580.
Ingals v Miller, 121 Ind. 188.

We have been especially interested in the discussion of the common law of assumpsit and of the cases wherein it has been employed. No situation paralleling the instant case is found where the action has been invoked. This is not conclusive that it is not available to the plaintiff but it is persuasive to that effect.

Of the many cases which we have examined the only one which at all approaches the instant cause in its facts is that of McKinnon v Vollmar (Wis.) 7582, 17 American State 178:

"Action for money had and received is the proper remedy to recover the consideration paid by the plaintiff to the defendant for a conveyance of land, if the circumstances are such that the plaintiff has the right to rescind the sale, and has done everything on his part necessary to such rescission."

Here, like the instant case, the deed had passed and the contract was executed to that extent. However, the cited case had both the elements of mistake and fraud. The agent for the defendant had shown certain lands to the plaintiffs upon which view and upon representations of the agent the purchase was induced. The deed was made for lands other than those exhibited. It was the claim of the defendants that the plaintiff should have been non-suited because their remedy was in equity and not at law for money had and received. The court said the contention might be well made were the action to rescind a conveyance of land or to compel the execution of one; that the only conveyance involved had already been rescinded, so far as plaintiffs could rescind it, by tender to defendants of a sufficient conveyance of the land in question and the deposit of such conveyance in court for the defendants. The court could very properly and did find that the facts supported the conclusions that the defendants should return the whole consideration received for the land. This is but the application of the equitable principle heretofore discussed. The reason, however, for the judgment was the mistake of the agent of the defendant and the fraud perpetrated upon the plaintiff. Although in the instant case there is no element of mistake or fraud if the consideration for the purchase money had failed in its entirety or to such a material extent as that damages would not compensate the plaintiff for the loss sustained, it is probably that the form of action would lie, which the plaintiff insists her petition stated.

In **Middleport Woolen Mills Co. v Titus, 35 Oh St 253**, first syllabus, it is said:

"Where money has been paid on a contract which has been subsequently rescinded, and the repayment of the money is the only thing remaining to be done, a petition for money had and received is sufficient; but while the contract is subsisting, the action can only be brought on the agreement."

Titus instituted his action for money had and received, claiming that the Woolen Mills Co. was indebted to him in the sum of $10,000.00, which it had theretofore received for the use of the plaintiff. The defendant answered that it had received the $10,000.00, which was payment for capital stock in said company; that it had performed all the stipulations of its contract and was at all times ready, willing

and able to deliver the stock to Titus and tendered and offered to deliver said stock. This was denied in the reply. The cause was submitted to a jury, which returned a verdict for the defendant. Upon error prosecuted to the Circuit Court the judgment was reversed. The company then prosecuted error to the Supreme Court, which is the case under consideration. In the statement of facts appearing from the record it is said that Titus entered into a contract in writing with the company, whereby he agreed to pay to it $10,000.00 for shares to that amount of its capital stock; that he had demanded the stock but had never received it. It was the claim of Titus that the stock to be issued to him was increased stock only and it further appeared that upon application the Secretary of State had refused to grant a certificate of increase. Thus it would further appear that the company was unable to perform.

It is said at page 257 of the opinion:

"If the contract between Titus and the company is subsisting, it is quite clear there can be no revovery upon this petition, for it can not be regarded as founded on the written contract. Swan's Pl. and and Pr. 57; see Bliss on Pl., paragraph 156, et seq.

"But if the contract has been terminated, and the only thing that remains to be done is for the company to pay and Titus to receive $10,000.00, with interest; there can be no objection to a recovery under this petition."

The Supreme Court affirmed the judgment of reversal of the Circuit Court

In **Seaver v Hall, (Neb.) 70 NW 373**:

"Where a vendor of land can not make title the vendee may, at his election, recover payments of purchase money, with interest, or damages for the loss of his bargain.

"Where time is not the essence of the contract, a vendor who is unable to make title at the time he should convey may have specific performance by tendering good title at any time before decree, provided he has acted in good faith, and specific performance can be enforced without injustice to the vendee."

In this case Hall had entered into an agreement for the purchase of a lot to which Seaver and others had fee simple title. The purchase price of $425.00 was paid but because Seaver had by mistake conveyed the lot to another he was unable, upon demand and after payment of the purchase

price, to make a deed. Some six years after the last payment of the purchase price the defendants were able to and did make and tender a warranty deed to Hall, which was refused. On these facts and some others the syllabi heretofore quoted were announced. It will be observed that here the contract was executory as to the delivery of the deed.

In the annotation to Towels v Campbell, (Ky.) 50 A.L.R. 175, cases are cited marking the distinction between the rights under executed and executory contracts. In Buchanan v Alwell, 8 Humph. (Tenn.) 518, the court says:

" 'Where the purchaser has taken a deed with covenant of general warranty, under which he has entered, and remains in the undisturbed possession of the land conveyed to him, if there be no fraud in the transaction, he can not, before eviction, on the mere ground of defective title, claim relief in equity, either against the payment of the purchase money, or to have the contract rescinded, or restitution of the purchase money. In such case, he must seek his remedy * * * upon the covenant of warranty in his deed * * *. But it is otherwise when the purchase money has not been paid and title made. If the purchaser is in possession under a mere equitable title, as a title bond, or covenant to convey, he has a clear and well established right in equity to resist the payment of the purchase money, or to have the contract rescinded, and the purchase money advanced refunded to him on the ground of defect of title in the vendor. He will not be required to complete the purchase, or to accept a conveyance, unless the title can be made according to his contract'."

And in Yeates v Pryor, 11 Ark. 58:

" 'There is a very marked distinction between executed contracts where the vendee has accepted a deed and entered into possession, and an executory contract where the vendee is called upon to approve and accept a title in affirmance and completion of such contract. When he has accepted a title he is presumed to have examined the evidence thereof and held them sufficient; and, in the absence of fraud, must, in most cases, rely upon his covenants of warranty, and show that he has been evicted, before he is heard to complain * * *. But the case is very different where, under an executory contract, the vendor presents his title. The vendee is put upon inquiry, and has a right to demand such title as he contracted for'."

And in Thompson v Jackson, 3 Rand. (Va.) 504:

" 'Executory contracts for real property * * * offer to the party the alternative of either suing at law for damages or asking the aid of equity to obtain the specific thing. The application to equity is not ex debito, but merely presents to the sound discretion of that forum this question: Is it better for the furtherance of justice, considering all the circumstances of the case, to give the party a specific execution, or to leave him to his legal remedy? Very different is the question where a party asks the court to rescind a contract, especially an executed contract. The first case, the court merely decides which of the two remedies a party shall pursue. In the second, it annihilates a solemn contract, rendered still more imposing by the fact that the parties have carried it into execution, thereby changing materially their situations, and giving birth to new rights and obligations. The vendor has parted with the title and possession of his land, and has taken his money, bonds, or other equivalent. The vendee has entered into possession, clothed with the fee or other estate purchased; and, for security of his title, has taken a deed with such covenants and warranty as his contract called for. To undo all this is a stronghanded measure, and none but a clear and strong case will justify it'."

We have discussed the questions presented in this case in a rather haphazard manner not attempting to classify the cases or citations under specific headings but in a general way. We have not analyzed the many Ohio cases cited because that was done insofar as necessary by Judge Reynolds and properly so, in our judgment.

To epitomize what we have undertaken to say, we are of the opinion that if the cause of action attempted to be stated in the amended petition was for money had and received, it was not established upon the pleadings at the time of the motion for judgment thereon, nor upon the case at the conclusion of the trial; that if it be granted that the cause of action was for the determination of a jury, the plaintiff could not have been prejudiced because of the pleadings and upon the record there was presented but a question of law for the trial judge; that upon the principles of equity which must be applied, either to an action for money had and received to an equitable suit for rescission, the plaintiff was not entitled to judgment. We have

considered all of the errors assigned and find none of them supported.

Judgment affirmed.

BARNES, PJ, and GEIGER, J, concur.